# CHARLESTON.

## MORRISON v. LEACH.

Submitted January 14, 1904. Decided February 23, 1904.

1. NOTICE—*Decree.*

Section 5, chapter 134, Code, 1899, in requiring "reasonable notice to the opposite party" of a motion to reverse a decree upon a bill taken for confessed, demands such notice to any party who has an interest in the maintenance of the decree whether plaintiff or defendant. (p. 128).

2. APPEAL.

An appeal lies from a decree reversing a decree upon a motion under Code 1899, chapter 134, without any motion to reverse being first made in the circuit court. (p. 129).

3. APPEAL.

There can be no appeal from a decree against a party on a bill taken for confessed as to him, until a motion to reverse shall be first made in the circuit court. If such an appeal is taken without such motion it will be dismissed as improvidently granted without considering the merits of the appeal. (p. 129).

Appeal from Circuit Court, Ritchie County.

Bill by C. P. Morrison & Co. and another against Minerva Leach and others. Decree for plaintiffs and defendants appeal.

*Reversed.*

V. B. ARCHER and WILLIAM BEARD, for appellants,

VAN WINKLE & AMBLER, MERICK & SMITH, and W. W. JACKSON, for appellees.

BRANNON, JUDGE:

A bill in equity filed in the circuit court of Wood County by C. P. Morrison and Co. and John A. Page suing for themselves and all other creditors of Thompson Leach, deceased, against Minerva Leach, executrix of Thomas Leach, and others, stated that the plaintiffs were creditors of Thompson Leach, and that said executrix had before that filed a bill to convene the creditors of Leach, fix their debts, sell his real estate, and apply the assets to the payment of such debts, and that a decree had been made fixing debts against the estate, among them those of Morrison and Co. and Page, and also a large debt in favor of the Parkersburg National Bank, and directing Leach's real estate to be sold by the executrix, and that she had sold the real estate, and that the sales were confirmed, and that the assets were not sufficient to pay the debts in full. The bill further stated that Minerva Leach as executrix gave bond with Dave D. Johnson and J. L. Buckley as sureties; that she had failed to comply with the decree by applying the assets coming to her hands as directed by it, and had wasted the assets; that notes given by purchasers of the realty to the executrix had been turned over to J. L. Buckley, or the Parkersburg National Bank to be held by them as collateral security for their debts; and that there had been paid to Buckley and Johnson and the Parkersburg National Bank, out of the assets, money in excess of the ratable portion going to them. The bill prayed that the executrix and her bondsman be held liable for such assets, and that the Parkersburg National Bank and other creditors who had received more than their proper *pro rata* shares of the assets be held liable therefor. The said Johnson and Buckley were sureties in the executorial bond of the executrix. Upon the bill of Morrison and Co. and Page, taken for confessed as to the Parkersburg National Bank, a decree was pronounced against Minerva Leach, Dave D. Johnson and J. S. Buckley, by reason of the executorial bond, for $3,878.72, to be paid to Levin Lewis as a special commissioner constituted by the decree to make distribution of the funds as directed by the decree; and the decree further re-

quired that the Parkersburg National Bank pay into the hands of said Lewis, on account of money received from the estate of Leach in excess of its *pro rata* share of the assets, $2,122.38, which when paid should be a credit on the $3,878.72, decreed against Leach, Johnson and Buckley. After this decree the bank moved the circuit court to reverse the decree for certain causes, giving notice of the motion only to the plaintiffs—Morrison and Co. and Page, and giving notice to Minerva Leach or Lewis, and upon such motion a decree was entered reversing the above mentioned decree so far as it required said bank to pay said sum of $2,122.38. Later still a decree was entered dismissing the bill so far as it sought to make said bank liable to Leach's estate or its creditors. From the two last mentioned decrees Minerva Leach appeals and Lewis N. Smith cross-asigns error therein.

The first decree is appealable, as like a reversal on appeal, it would bar any later decree against the bank. It decided that the bank was not liable.

Section 5, chapter 134, Code 1889, provides that a decree entered upon a bill taken for confessed may be reversed on motion, but that "reasonable notice to the opposite party, his agent or attorney" of such motion must be given. "Opposite party" under this statute does not mean only the plaintiff, but it means any party to the suit who has an interest in upholding the decree sought to be reversed whose pecuniary or property interest would be prejudiced by reversal. The word "opposite" as used in the statute means opposite in interest. The statute as to depositions requires notice to the "adverse party." I do not think a deposition can be read against any party without notice to him, no matter whether he is plaintiff or defendant. It cannot possibly be thought that a decree can be reversed without notice to a person interested in its maintenance. He has no day in court. It would take his property without due process of law. We cannot give the statute a construction which would militate against the constitutioon and afflict gross injustice, Minerva Leach had a deep actual interest in having the decree against the bank maintained, because the sum decreed against it operated as a partial payment on the sum decreed against her, and increased the assets of the estate in which she was

distributee, to say nothing of her right as executrix to represent the estate. The decree of reversal as to her was void, a simple nullity. Though that decree is a nullity, an appeal lies from it, because a null decree may be assailed collaterally, or directly by appeal, or by bill of review where such bill of review suits the case. *McCoy* v. *Allen,* 16 W. Va. 724.

It cannot be said that Minerva Leach must first herself move the circuit court to reverse the decree of reversal since it was rendered in absence of appearance by her to the motion. Any one has a right to appeal from an erroneous decree, as a general principle, whether on a bill taken for confessed or on appearance; but chapter 134 curtails this right of appeal in case of a decree on a bill taken for confessed to the extent that it requires first an unsuccessful motion in the circuit court; but this applies only to cases upon a bill taken for confessed; it is so limited; it does not apply to an erroneous decree upon a motion to reverse under chapter 134. From such decree appeal at once lies. That chapter gives it, as well as chapter 135. *Midkiff* v. *Lasher,* 27 W. Va. 439.

The circuit court could not, for want of notice to Minerva Leach, decide upon anything assigned as ground to reverse the decree, because it had no jurisdiction; nor can we do so.

We cannot say whether the decree dismissing the bill as to the bank is right or wrong, because Minerva Leach has made no motion to reverse it in the circuit court, it being a decree in the absence of her appearance. *Bock* v. *Bock,* 24 W. Va. 586; *Forest* v. *Stephens,* 21 *Id.* 316. Whether by reason of this decision the decree dismissing the case as to the bank is made null and void, because of the finality of the first decree ending the case which decree is reinstated by this decision, or merely erroneous, we do not say. Whatever its status we can not pass on it for want of such motion. The decree of the 21st day of June, 1900, is reversed so far as it sustains the motion of the Parkersburg National Bank to reverse the decree pronounced in this cause on the 23rd day of February, 1899, and reverses so much of the latter decree as ordered said bank to pay $2,122.30 to special commissioner Levin Smith, and said motion is overruled—which is ordered to be certified to said circuit court. No remand,

*Reversed,*

DENT, JUDGE, (dissenting):

I must dissent in this case. The bill was taken for confesed as to Minerva Leach. She never appeared in the cause except to make an exception to a commissioner's report, which was sustained in her favor. So the cause in all other respects stands on bill taken for confessed. On the 21st day of February, 1899, a decree was entered against The Parkersburg National Bank for the sum of $2,965.42, to be paid to Levin Smith, special receiver, to be distributed in certain proportions among a large number of creditors of Thompson Leach, deceased, and if collected and so distributed Minerva Leach was to have credit therefor on a large debt decreed against her. There was no decree in her favor against The Parkersburg National Bank, and she was only collaterally interested in such decree, while the plaintiff and all the other creditors of Thomas Leach, deceased, were directly interested therein.

On the 29th day of April, 1899, another order was entered in the cause awarding execution against The Parkersburg National Bank for the sum aforesaid. The cause was continued on the docket for a final distribution of the funds and for the future report of the special receiver.

On the 5th day of March, 1900, the Parkersburg National Bank filed its notice of error in the decree of the cause, which it had given to the plaintiffs, the parties at whose instance the decree was entered against it. The motion to correct the decree was then submitted to the court, who took it under advisement.

On the 21st day of June, 1900, the court entered another decree reciting that "This cause came on again this the 21st day of June, 1900, to be further heard upon the papers formerly read and proceedings hereinbefore had, the notice duly executed on the plaintiff that the Parkersburg National Bank would move the court to set aside the decree of February 23, 1899, the motion in accordance with said notice and was argued by counsel."

Then the court proceeded among other things to set aside the former decree in so far as the Parkersburg National Bank was concerned, and recommitted the cause to a cimmissioner with instructions as to the extent of his inquiry. Is this such a final decree as is appealable? The court still had jurisdiction

of the cause, and it now merely enters an order setting aside a former decree without adjudicating the principles of the cause and refers the same to a commissioner. This order neither settles the principles of the cause nor is it final, but is purely interlocutory. *Woods* v. *Harmison,* 41 W. Va. 376; (23 S. E. R. 560) ; *Laidley* v. *Kline,* 21 W. Va. 21; *Kanawha Lodge* v. *Swann,* 37 W. Va. 176. An order setting aside a former decree in a cause is not appealable unless it settles the principles of the cause or is final. The decree set aside may be reinstated by the court on further hearing, and thus any necessity for an appeal be obviated. This order being interlocutory and not appealable, and Minerva Leach having made no motion to set aside the final decree dismissing the bill as stated in JUDGE BRANNON'S opinion, cannot appeal therefrom. Hence her appeal should be dismissed as improvidently awarded. But admitting such decree to be appealable, as to this appellant, it is on a bill taken for confessed. The decree was entered in a pending cause in which appellant was summoned, but never appeared. There has been no litigated questions between her and any other party to the suit. So far as she is concerned, all decrees have been entered on bills taken for confessed. It is said, however, that there was a notice given in this cause. Not by her nor to her. Nor is she in any way a party to the notice or bound thereby. She cannot appeal from the notice, because she is in no sense a party to it. Only parties to a suit or motion can appeal therefrom. *Miller* v. *Rose,* 21 W. Va. 291; *Supervisors* v. *Garrill,* 20 Grat. (Va.) 484. In *Midkiff* v. *Lasher,* 27 W. Va. 439, parties to the notice appealed. *Bock* v. *Bock,* 24 W. Va. 586; *Forest* v. *Stephens,* 21 *Id.* 316. Minerva Leach not being a party to the notice is not in position to appeal, but the decree stands so far as she is concerned as though no notice had been given, and that is on bill taken for confessed, and if it were a final decree, instead of being interlocutory, she could not appeal therefrom until she has given notice to set the decree aside and had such motion overruled under chapter 134, Code. *Watson* v. *Wigginton,* 28 W. Va. 533; *Steenrod* v. *Railroad,* 25 W. Va. 133. Nor was she entitled to be made a party to the notice given by the bank. She was a co-defendant, has never appeared in the case, has no decree against the bank, and is only collaterally interested in such decree. Nor does the pleadings being the bill alone

justify any decree or litigation between co-defendants. Where the bill does not entitle the plaintiff to relief, no relief can be granted to one defendant against another. *Worthington* v. *Staunton,* 16 W. Va. 208; *Vance* v. *Evans et al.,* 11 W. Va. 342. If she had been served with notice, she could not have resisted the motion of the bank without filing an answer in the nature of a cross-bill or an original bill seeking affirmative relief against the bank. Therefore she could neither resist the setting aside of the decree nor the dismission of the bill as to the bank, for she had no such legal interest in the contest between the plaintiff and her co-defendant as entitled her under the pleadings as they existed at the time the decree was entered to set up any claim against her co-defendant, or to object to the dismission of the bill as to such defendant. If she had filed a cross-bill or an answer in the nature of a cross-bill, uniting in the prayer of the bill and the decree against the bank had been in her favor, her position would have been entirely different. She did neither. She did not even appear in the suit, and she is not in position to object to the setting aside of the erroneous decree against the bank, or to resist the dismission of the bill as to the bank. Such being her legal position, she is not entitled to notice of the bank's motion under section 5, chapter 134, Code. It may be she may have some interest adverse to the bank, but it has not been presented by the pleadings in such manner as to make her an "opposite party" to the bank within the just and legal signification of the terms as used in such section. To make her such opposite party, she must not only have a claim against the bank, but such claim must have been presented by her and be litigated and adjudicated between her and the bank by such decree. Persons collaterally interested are not even entitled to be made parties to a suit. *Mitchel* v. *Chancellor,* 14 W. Va. 22. So the interest of the party in a decree must be direct and not collateral before such party is entitled to attack it. The language of section 5, shows the purpose of its enactment and plainly makes evident that the interest of a party in a decree must be direct before such party is entitled to a notice of a motion to correct such decree. It is as follows: "The court in which there is a judgment by default, or a decree on a bill taken for confessed, or the Judge of said court in the vacation thereof, may on motion reverse such judgment or de-

cree for any error for which an appellate court might reverse it, if the following section was not enacted and give such judgment or decree as ought to be given." "Every motion under this chapter shall be after reasonable notice to the opposite party, his agent or attorney in fact, or at law, and shall be within five years from the date of the judgment or decree." By opposite party is meant the party who would have occupied the position of appellee in case of an appeal by the party aggrieved prior to the enactment of this section. In this case, it would have been the plaintiff at whose instance and suit the decree was entered, and not a co-defendant who has not appeared, made any defense or sought any relief. This is so plain from the evident purpose, object and language of the statute that it seems a useless waste of words to exemplify or explain the meaning thereof, and it does not justify an appeal to the constitution to augment or expound such meaning beyond the plain expression of its terms.

To throw down the bars in this manner is to destroy the evident intention of the statute to supply a mere substitute for an appeal and open wide the field for endless litigation to parties not legally interested in the decree. Suppose the bank had appeared before the original decree, demurred to the bill and it had been dismissed as to the bank, could this co-defendant who had never appeared in the cause have afterwards moved to set aside the decree dismissing the bill as to the bank and on her motion overruled, have appealed to this Court? Would not this Court have promptly held that she hand no such legal interest in the decree as entitled her to appeal, and that such decree did not injure her, or preclude her rights to the assertion of any just claim or remedy she might have against the bank? Is not this precisely the same condition she is in now? She has lost no legal right or remedy by the decree of which she complains. Nor is the adjudication between her and the bank, for she had no litigation with the bank. How different is it with the illegal decree this day made by this Court, for which the aid of limitation, five years from the date of the erroneous decree entered against the bank, ending on this day, it forever precludes the bank from getting rid of a decree except by payment which the circuit court that entered it has determined to be erroneous and unjust. As between the plaintiffs who had notice and the de-

fendant bank, the decree is not void, but it is valid, for it was not a joint decree either against or in favor of Mrs. Leach. Hence, it is improper to avoid such decree in so far as the plaintiffs are concerned, for they having notice thereof are bound by it. *Vance Shoe Co.* v. *Haught,* 41 W. Va. 275. Plaintiffs have no grounds of appeal and do not appeal. Mrs. Leach claims the right of appeal solely from the want of notice. Her interest and the plaintiff's are not identical, and she is in no wise injured by setting aside of a decree erroneously entered at the instance of the plaintiffs, for she is not thereby deprived of any legal right or claim she may have against the bank. I look upon the decree entered by this Court against the bank as a great, grievous and irremediable wrong in an appeal case in which a co-defendant with whom the bank has had no litigation is the appellant, and the plaintiffs are the appellees.

The appeal should be dismissed as improvidently awarded.